We've got 15 minutes aside. Mr. Cole, I gather you're by yourself, but then on the other side we've got two lawyers. To you first, Mr. Cole. Yes, Your Honor. May it please the Court, I would like to reserve three minutes for rebuttal. Mr. Collette alleges, under California common law, that the generic defendants failed to adequately warn when they failed to ensure that Mr. Collette received warnings called medication guides. If Mr. Collette had received this warning, he would not have taken amiodarone, the drug at issue in this case. Can I start with the threshold issue of maybe it's standing? Do we have a proper appellant before us in this case? Because the rules do not permit any case or appeal to proceed by a person who is deceased. They require and set a time limit for replacing them. None of that has been done, and this issue was noted some time ago, and it's not been fixed. Yes, Your Honor. I believe in the third amended complaint, they added Mr. Collette's widow as part of the suit. They promised that they would do it, and the district judge noted that it's never been done. And the rule says, the Federal Rule of Civil Procedure 25, that the motion is not made within 90 days at the service of a statement noting the death. The action by or against the decedent must be dismissed, and then our rules also require it to be fixed. And we can't proceed without a proper party, and I don't see why this hasn't been fixed. Yes, Your Honor. I believe that we did in the third amended complaint add Mr. Collette's widow to the case. But as for the rest of that issue, we would be able to file any further papers with the court substituting her in. I believe his cause of action survives, Your Honor. So, this court's decision in Stengel v. Medtronic is controlling here. And Wyeth, as the brand innovator, created an entire market for amiodarone as a first-line treatment of atrial fibrillation, which is not a safe use. Mr. Collette pleaded that the method defendants should have used to warn consumers is following Federal regulations intended to ensure that consumers receive the guides. But it has always been clear throughout these proceedings that he is making a state law claim. Defendants assert that Mr. Collette's claims are barred for essentially three reasons. One, that he inadequately pleaded them. Two, that they're preempted under conflict preemption. And three, that they're barred by the learned intermediary doctrine. The district court agreed with the first argument and suggested it agreed with the second argument. But as we'll discuss, it is impossible to address the second argument, preemption, without first considering the scope of state law, which the district court did not do. I want to start by addressing Rule 8, though, because it was the stated basis for the district court's decision. As we stated in our reply brief, we pleaded Mr. Collette's claim in detail. The trial court dismissed the complaint because it omitted details like the name of Mr. Collette's pharmacy. But it's our position that those details are not necessary for a defendant to defend this case, especially since they are easily attainable in discovery, including in initial disclosures. And this is just by way of illustration because I don't believe that it's in the record, but we had actually said the name of Mr. Collette's pharmacies, Walgreens and CVS, in our initial disclosures in this case. I think the more fundamental problem is just the failure to plead facts that plausibly suggest wrongdoing on the part of any of the defendants. That's, I think, where the district court got most stuck and where I'm stuck. So maybe you can zero in on that. Yes, Your Honor. So the wrongdoing that we have alleged that the generic defendants have done is failing to provide warnings in accordance with California law. Well, no, no, because there are federal regulations that spell out the duty. And I understand you want to piggyback on that under state law. That might be permissible, but you don't get to add additional duties beyond what federal law requires. Right. You agree with that? Yes, Your Honor, I do. I do agree with that. And our claim has always been based on their failure to comply with the federal regulations that say that they have to provide a medication guide. Not to your client, though, not to your client. That's the key point. Your your allegation is essentially, well, my client didn't get it. And that's that's my claim. So they therefore they must have done something wrong. And I think that's what the district court faulted you for, is that, no, you need to provide more factual detail as to why the defendants didn't comply with the obligation that the federal regulation imposes upon them. So help me understand why you think you've pleaded enough on that point. Yes, Your Honor. We did plead that they did not provide the medication guides or that they did not comply with the federal regulations, which requires them to provide the medication guide. Point me to the specific paragraph in the complaint you or paragraphs that you want us to focus on for that point. Yes, Your Honor. In the second amended complaint, let me pull it up. The second amended complaint, I believe that it's paragraph 30, 33. OK, 31. Not in the third amended complaint. Your Honor, with the the in the in between the after the second amended complaint, the district court completely dismissed these particular claims. And so we preserved those for appeal, but did not allege them in the third amended complaint. So that's after this complaint, those particular claims were dismissed. We said that Mr. Collette is not aware of his use, that his use of the medication was for off-label use. And as noted above, he was not in a situation of last resort as to his AFib. More importantly, Mr. Collette did not receive the required medication guide from defendants for the prescription he filled. He did not receive the medication guide from his pharmacist because the medication guides were not provided by the defendants to the distributor or pharmacist for distribution the plaintiff with his prescription. Right. And that's the extent of the factual allegations you provide to explain why the defendants violated the federal regulation. Is that correct? Yes, Your Honor. That that is the gist of it. We are alleging that they did not do something. They did not provide sufficient medication guides to the distributor so that Mr. Mr. Collette would receive one with his prescription. OK, that. Yeah. And that that by itself may be deficient even to try to establish wrongdoing. But but my I guess my further concern is simply that the regulation doesn't even require that the defendants provide the medication guide itself to the distributors or to the pharmacist. It says that they can provide the means for the distributors and pharmacists to produce the guides themselves. And you haven't alleged that they failed to do that even. Yes, Your Honor. We so on this point. So I think we have we have alleged that they violated the regulations. I think that a fair reading he did not receive because they did not provide it to the distributor or the pharmacist. Even in their appellate brief, this is page thirty four of sixty eight of their appellate brief. They say that Mr. Collette's claim necessary. This is when they're discussing the pharmacy. The fact that we did not plead the name of the pharmacy. They say Mr. Collette's claim necessarily depends on whether his pharmacy received from the generic defendants, the medication guides or the mean to reproduce them to dispense with his prescription. And so, Your Honor, the purpose of rule eight is so that the defendants have enough information to mount a defense. And based on that sentence in their appellate brief, I think that they they understood that we were alleging that they did not provide sufficient medication guides to the pharmacy or that they did not provide the means to produce them. What's your basis for saying that besides the fact that your client simply didn't get the guide itself? Your Honor, we are somewhat without without having conducted discovery. It's our understanding from we've done very many similar cases and nobody receives these guides. And we are we are alleging it based on our understanding of what happens, that they're not they're not giving these insufficient. I think that's the problem the district court found. And the problem I'm having is that I think what you are starting from, the fact you're starting from is that my client didn't receive the guide. Therefore, the defendants must not have provided the guide to the pharmacy or the distributor. And I think what the district court was saying was, OK, well, that's fine as a just a general allegation. But to meet the Twombly and Iqbal standard, you've got to give us a little bit of meat on the bones. What's the factual basis for your claim that, in fact, the defendants are responsible for the failure of your client to receive the guide? And you if 30 paragraph 31 is all you've got, that seems to me too bare bones to survive Twombly and Iqbal. But help me understand why you think that's wrong. Well, Your Honor, this is this we're alleging a failure to do that, to do something. And so in some sense, it's very it's very hard to provide extra extra details, especially since, you know, we haven't received any discovery in this case. And I believe that from rule eight that just saying, well, they didn't do it. They didn't provide it to the pharmacy. They didn't. I believe that that is a sufficient to allege what we're alleging is that they did not do anything. And the regulation, the wording of the regulation says that they're required to ensure distribution to the patient by doing, by providing it to the distributor or pharmacy and by ensuring that they have the means. And so I think that the fact that he didn't receive it is as is evidence that they didn't do that, because if they had followed the regulations, Mr. Collette would have received it, because the regulations provides a way of doing it to ensure that the patient receives it. Your Honor, and I would like to sit on the preemption issue under Stengel. This court said that it's it's enough that there is a general duty to warn that to survive Buckman preemption. So as the predicate for this court said in Stengel, the predicate for a failure to warn claim is the general duty to inform users and purchasers of potentially dangerous items of the risk involved in their use. This general obligation is no more a threat to federal requirements than would be a state law duty to comply with local fire prevention regulations and zoning codes, or to use due care and the training and supervision of a workforce. And so Buckman was really talking about that that was a fraud on the FDA claim. And it was really talking about situations in which the plaintiff's claims would interfere with the regulatory apparatus of the FDA. And here are the FDA. Here we're alleging that they failed to warn the consumer by failing to follow the FDA regulations. But we're not saying that they defrauded the FDA where our focus is on the consumer. And I think that under under the Stengel decision, that is clearly not not preempted under Buckman, because even though there is no specific requirement to provide a medication guide under California law, there is the general requirement to warn, which just really quick. I wanted to address their learning intermediary doctrine argument, because while the learning intermediary doctrine might might someday down the road after there's been factual discovery, preclude the failure to warn argument on a state law basis. You can't really determine that without fact finding there. There has been several federal courts which have held that the learning intermediary doctrine, which says that if they provide an adequate warning to the position, there is no further duty to warn. The consumer is an affirmative defense that depends on whether defendants can show that they adequately warn the learning intermediary. And especially in light of our of our allegation that that Wyeth was advertising this drug for atrial fibrillation, which is not an appropriate use. We think that there's going to be a fact question of whether they adequately provided the the the FDA warnings to to Mr. Fletch's physician. I think I reserved a couple minutes. You want to reserve your time. OK. Now, the other side, you've divided your time 12 and three. Mr. Boney, are you going first? The 12 minutes? That's right, Your Honor. It's all yours. Sure. Thank you so much, Your Honor. Good morning. And may it please the court. Lindsay Boney for the defendant. And as Judge Fletcher said, I'm reserving three minutes of my time for my co-counsel, Mr. Ostfeld, to address the preemption issue to the extent that the court wants to hear argument on that issue. But just to be clear, the court doesn't need to reach that constitutional question because the plaintiffs had four opportunities to plead a viable claim. And yet they never did. Every other circuit court that has looked at claims that look just like these filed by these plaintiffs, lawyers on behalf of amiodarone plaintiffs, have dismissed or affirmed dismissal, 12B6 dismissal on the pleadings. The second circuit that we submitted in our 28J, the Fourth Circuit, the sixth, the eleventh, just like Judge Donato here dismissing it on 12B6 grounds. This is despite, in this case, Judge Donato giving the plaintiffs two roadmaps for what they needed to plead. And yet the plaintiffs still only made boilerplate general allegations that simply parroted the elements of a cause of action, as we just heard. Almost no facts, just conclusions, and certainly no facts tied to Mr. Collette specifically. In short, this complaint could have been filed in any case involving any medicine by any plaintiff against any defendant. And that's true really for all of their liability theories, all three of them. And it's not clear whether two of those are still in the case, but just briefly, for fraudulent off-label promotion, which they say is now limited to statements of third-party websites, for failure to report adverse events, they say in general as opposed to specific adverse events, and for failure to distribute medication guides, which my friend on the other side has been arguing about just now. But all of these claims are factually and legally insufficient, and I'll discuss them in turn. But again, your sister circuits have decided these questions most chiefly or most recently, the 28J letter that we submitted, the Frye decision from the Second Circuit, a nearly identical complaint with the same allegations filed by these very plaintiff's lawyers in another amiodarone case. And the Second Circuit affirms dismissal because this complaint lacked any sort of sufficient factual detail. And I should add, in this case, Mr. Collette's claims are time-borne in any event, although Judge Donato never reached that question. Can I get to the distribution of the information to the pharmacy or the distributor? I have trouble understanding how consistent with Rule 8 the plaintiff needs to say anything more than X did not happen. That seems pretty particular. It gives fair warning. The other side can come in with evidence that it did happen. What are they supposed to say? It didn't happen? They're supposed to say it twice? This is not Rule 9, so it's just Rule 8. I don't get it. Understood, Your Honor. And I guess two responses to this point. The first is it goes to what Judge Donato said. So Judge Donato says this complaint doesn't allege any facts. I mean, they could have started with any facts. He highlighted the fact that they have not even alleged the name of their pharmacy. It's not like he created some sort of particularity requirement. It was just a highlighting of the fact that there's nothing in here about these plaintiffs in particular. They could have said where they went. Did they ask for it? They alleged in their complaint that it's available online. The medication guide is available online. They didn't allege that the link was dead. They didn't allege that they asked their pharmacy for it. There's simply no allegations that are specific to Mr. Collette. But in any event, the claims would fail for the very reason that Judge Watford, you were asking about just a moment ago. I mean, what the regulation requires is that it requires drug manufacturers to do one of two things. That the way that you can satisfy the medication guide regulation is either to distribute enough medication guides, physical paper guides to the distributors to get to the pharmacies, to get to the consumers, or the means to provide those medication guides. The plaintiffs never alleged that we failed to provide the means to produce those guides, nor could they. They say that we complied with the FDA regulations. They say that that medication guide was adequate and that it was a perfectly appropriate warning. And they even allege in their complaint where it's available online. So there's no way that they can plausibly say that the pharmacy, whatever pharmacy it was that they went to, didn't receive the means to provide that medication guide. And make no mistake about it, the name of the pharmacy is an important fact. In terms of how it is that the defendants are going to respond in their answer, whether to admit or deny whether they provided the medication guide, other than just a general denial, they need to know the name of that case. And in a case like this, you can't even begin to determine product identification, what product the plaintiff actually used as between different generic manufacturers, as between the brand name, without knowing what it is that that pharmacy is. Now, the plaintiffs have also asserted sort of a different theory in their brief, that instead of ensuring distribution or ensuring that the pharmacies themselves got the medication guide that could then give it to the consumer, they seem to suggest that we had a duty, that the defendants had a duty to ensure that the medication guides got all the way to the patients. And it sounds like my friend has just conceded that that's not in fact what their claim is, that they're simply talking about the four corners of the federal medication guide regulation. And the regulation says nothing about the pharmaceutical companies getting the medication guides into the hands of the consumers, because the way that the system works is that they have to get a prescription from their doctor, they go to the pharmacy to get it filled, and the regulation puts that duty on the pharmacies. And that couldn't be the law. It couldn't be the law, because they say they didn't receive it, and yet they say at the same time it was available online. And so if what they're suggesting is that the pharmaceutical companies were responsible for ensuring that it actually got into Mr. Collette's hands, that's quite an extraordinary duty that would be imposed on these defendants, and certainly one that's unworkable and that no court has ever imposed before, this sort of non-delegable duty. It's not like a chainsaw that's sold that has a warning on it. You have to go get the prescription from your doctor, you get it filled from the pharmacy. On that theory, we would have to have employees at every pharmacy. I think your opponent acknowledged there would be serious preemption problems if that were the theory. But can I shift you to the off-label marketing claim, particularly against Warren? Sure. Sure, Your Honor. And so there isn't much in there for you at this point. Hang on. Let me ask the question that I want to ask so that you can focus on what I'm most interested in. As I understood it, the Second Amendment complaint, the district court faulted the plaintiffs for not basically connecting the dots. In other words, there was a lengthy exposition about all the things that Wyeth had done wrong in terms of polluting the marketplace of information about this drug. But they never the plaintiffs never tied that to his doctor specifically. And I guess I thought in the Third Amendment complaint in paragraph 79 that they in fact did that. And I wanted your help in understanding why you don't think that was enough. Sure. And while I turn to paragraph 79, apologies, Judge Watford. Apologies that I spoke over your question. I thought that you were wrong. And so in paragraph 79, just sort of step back generally first. What the plaintiffs have been alleging in this case as to why specific off-label promotion was generalized. There was discussion about letters from FDA about off-label promotion warning letters. But in terms of specific fraudulent off-label promotion, which is what they have to allege, because an off-label promotion claim just for violating FDA regulations would be preempted for the same reasons that the medication gag claim would be preempted. And so there has to be the fraud and it has to be pleaded with particularity under Rule 9. And so in the complaint, the only specific thing that they have provided is this sort of promotional bulletin at a pharmacist conference in 1998. So it's just not it's not reasonable that here 15 years later, if that's the only conduct that the plaintiffs say is problematic, if that's the only particular allegation that they have, why it is that that would have been reasonable 15 years later for this this doctor who couldn't have been at the pharmacy conference to be prescribing. Let me spin out more charitably to the plaintiffs what I think their theory is and then you can rebut it. Okay. They say that Wyeth in particular was responsible for putting out all kinds of misleading information about the safety and efficacy of this drug for the condition that, I guess, this plaintiff ultimately suffered from. And according to them, your clients, Wyeth in particular, knew that the drug was really not safe for treatment of this sort of non-serious heart condition. Yet it went to great length to try to convince doctors and the medical community in general that the drug was safe for that and should be prescribed for it. They say then, this is the reason paragraph 79 comes in, that that information made its way to the PDR and is it Hippocrates, whatever those apps are, that all doctors go to to get information about drugs and that your clients knew that those apps had this misleading, this highly misleading information on there that doctors were relying upon in actually writing prescriptions and that under, according to their legal theory, under federal law, your clients were responsible essentially for ensuring that that information was accurate and failed to do so. They then say in paragraph 79 that this plaintiff's doctor, in fact, looked to those two apps, relied upon the misleading information there, and but for that misleading information would not have written the prescription to this plaintiff. So it seems to me that at least connected all the dots from a causation standpoint. But tell me, tell me what's defective about that. Well, it's certainly a very long inferential chain, and I guess at the beginning of that chain would be particular off-label promotion that they say would have influenced that. 9B requires that particularity, the who, the what, the when, the where, the why. There's none of that here except for this one pharmacist reporter bulletin that they point to. Number two, Pedia and Hippocrates I don't think are disputed at this point, that they are independent third parties. They're third party websites that the record was clear in the district court. These are, they make their own statements. They have their own employees. They publish their own information, and they themselves said on their websites that this was not a labeled use. And so then for the plaintiffs to then have a third inference and just conclusively allege that on the basis of that off-label promotion that happened back in the 1980s and the 1990s that they say that they haven't particularized, that somehow influenced Pedia and Hippocrates, these third party vendors that write their own warnings where California law imposes no duty on any product manufacturer to monitor the conduct or the statements of the third parties. And certainly FDA, the guidance documents that we cited in our brief, doesn't require any of that either. And then to allege a generalized allegation that their doctor relied on all of this, that's just not a plausible claim. Perhaps it's possible, but that's certainly not what Rule 9b requires, much less Rule 8. They say that federal law actually makes at least some of this information, for example, the information that appears on the PDR, part of the label for which the brand name manufacturer is responsible. So that's why I'm focusing on why. So they say, fine, maybe it's a third party. Right. It's a third party source. You guys didn't write this stuff, but you are legally responsible for what appears there if what appears there is false and misleading. And so is that just incorrect as a legal matter? Is that what you're saying? It's incorrect as a legal matter, Your Honor, just because sort of the nature of the regulations have changed. When the regulations are talking about the PDR, it's actually a different resource. I know this seems strange, but it's the physician's desk reference, which is the actual labels from the pharmaceutical companies. The new digital resource is called the physician's digital resource or digital reference. And so it's something different that clearly is written by those different third party manufacturers and they haven't shown otherwise. And they didn't reply, respond to any of our arguments in their reply brief. I apologize to the court that I'm over my time and I've eaten up all of my colleagues three minutes. But if you might have some time to address preemption of the court so inclined. Well, no. If there are any further questions to you, we were quite happy to take the time. Are there any further questions from the bench for Mr. OK. Mr. Osfield, if you'd like three minutes, you've got them. Thank you, Your Honor. I appreciate it. And Greg Ostfeld on behalf of Sandoz, my territory today is to address the issue of preemption. Before I do, though, Your Honor, I think Judge Collins, I'd like to address your opening question because I think it's a very salient one. I reviewed the record. I believe you're correct. This appellant has never substituted in the estate for the deceased plaintiff. And under federal rule of appellate procedure, 43A, that clearly is required. I think it's actually been addressed by other courts in a mootness framework rather than a standing framework. The Third Circuit in Ortiz v. Dodge addressed the point and noted that at some point, the failure to substitute a proper party for a deceased appellant moots the case. Under Article 3, our jurisdiction and that of the courts below is limited to cases in controversy. He did put it in the caption and he did have a sentence in the third amended complaint. But it's more of a housekeeping matter. I mean, before we decide this case, that's got to be fixed. But that is to come. But I understood, Your Honor. The only other point I would add on that is this was brought to plaintiff's attention back in July of 2019. It was footnote one of our motion to dismiss the third amended complaint, which is at volume two, page 166. So this has been pending for quite some time, which is why the Ortiz decision may come into play. Nonetheless, I'll move on to preemption. I'll begin by noting that we agree with Mr. Boney. You don't have to reach this issue to the extent that you believe the district court's Rule 8 ruling on the pleading defects is dispositive. To the extent the court takes it up, however, we do believe the district court correctly held plaintiff's claims are preempted. Plaintiffs are trying to use private state law claims to dictate how a manufacturer must comply with an exclusively federal obligation. That is a core Buckman preemption situation. These medication guide claims exist solely by virtue of the federal medication guide regulations. And that's perfectly clear on the face of plaintiff's pleadings. The second amended complaint contains approximately three dozen allegations that are all variations on the medication guide requirement being FDA required, FDA mandated or similar language. I thought that our decision and stangle that that was permissible as long as they didn't try to add to whatever the federal duty required. And it sounds like from the plaintiff's counsel this morning that they're not trying to do that there. They recognize they have to stay within the bounds of what the federal regulation dictates. And if they do that, I don't see why there's a preemption problem. Respectfully, Your Honor, I disagree because here they are. They are resting their claim expressly on the existence of a federal duty. They go so far as to say that. But that's not right. But that's not right. But that's not responsive to Judge Watford's statement. I mean, I think our case law is very clear that if the duty remains the federal duty and the only thing that the state law does is say that there's a state law cause of action for violation of the federal duty, there's no preemption. Well, there are there are two points that I would make there, Your Honor. One is that there is a law. There is an addition to the duty that is made in plaintiff's allegations. They're not just saying that it's a duty to comply with the federal regulation. They are saying that there is a duty to ensure that a medication guide reaches the patient in compliance with the FDA regulations. That is an important gloss because what they are doing is trying to use state law as a vehicle to tell a federal manufacturer how it is required to comply with a federal regulation. And by adding that gloss, something that's not found in the text of the medication guide regulation, what they're essentially raising is exactly the danger that Buckman will. Your time is running, so I'd like to interrupt. So let me understand what your position is, then, that if we had if we if we if the plaintiff could get past rule eight, which is a separate question. But I'm assuming for purposes of my question that the plaintiff can get past rule eight and that he has alleged maybe something that's imposed as an additional duty. But he's also alleged a failure to comply with the federal regulation. That should stand them. The part that simply says is that they that you're that they've been a failure to comply with the federal regulation. Isn't that right? I don't think so, Your Honor. I respectfully disagree. And you can look to plaintiff's own authority. The the Coleman versus Medtronic case from the California appellate court, which makes clear where you draw the line. The line is that to survive Buckman preemption. It's not just saying that there was a failure to comply with the federal regulation. It has to be conduct that would give rise to liability, even if the federal regulation had never been enacted. That's not the case here. They are expressly relying on the existence of the federal regulation as the basis. You cannot disentangle them. Unlike in Stengel, where they were relying on a where federal law was being used to inform the standard of care with respect to a preexisting duty to warn. Here they are expressly asserting the existence of the federal regulation as the basis for their claim. And then saying state law creates an exception to the learned intermediary doctrine based on the existence of the federal regulation. So you have a circular back and forth where they're essentially saying there's a federal regulation. That federal regulation changes state law. It may create an exception to the learned intermediary doctrine. And then because the federal regulation creates the exception, we can now enforce the federal regulation through the vehicle of state law. That is exactly the danger that Buckman warns against. It's OK. OK. OK. We got it. Thank you. Any further questions from the. Thank you, Your Honor. All right. You've saved some time. Let's put two minutes on the clock so you know what you're dealing with. Yes, Your Honor. I do respectfully disagree with the interpretation of Stengel. There, the failure to warn claims was based on failure to provide adverse events to the FDA. And of course, they could not have done that before the FDCA because the FDA didn't exist. Judge Fletcher, I think that what you were saying is exactly what we were getting at. When you're alleging that defendants negligence was not doing something, it is hard to provide many details beyond that. I do want to touch on touch on something that Mr. Osfield said. He said that, you know, we're making up the word ensure. But actually, the federal regulation itself says each manufacturer is responsible for ensuring that medication guides are available for distribution to paint plaintiff to patients by either providing sufficient medication guides or providing the means to reproduce medication guides. And we've alleged that they didn't do either of those things. And yes, at this stage, without discovery, it's hard to say, to talk about a lot, why they didn't do that or what went wrong in their process, that that didn't happen. This is plowing, re-plowing old ground. But let's go back to, you've just said that you've alleged that they didn't do either of those things. That is to say, they neither provided the information nor provided the means for the information. Can you show me where in the complaint you say that they failed to provide the means for getting the information? Your Honor, I think we perhaps didn't do it as clearly as we ought to. And we are in fact alleging that. And the defendant understood that we were. No, no, no, no. My question is much more specific than that. Where did you allege that the defendant didn't provide the means? Because I think you didn't. And I think that was established in your colloquy with Judge Watford. But just now you said you did. So I want to make sure I give you a chance to persuade me that you did. Yes, Your Honor, we did not allege it that I'm aware of in those words exactly. But I think that under the reading, you know, a broad reading under Federal Rule 8 of Paragraph 31 where we said that they did not provide it, that arguably that would have been one of the ways that they could have provided it. And I believe that we also quoted the regulation in the complaint and implied that they did not comply with the regulation. Okay. And so that would be. Got it. Thank you. Okay. That's your time. Thank both sides for their helpful arguments. The case of Collette v. Wyeth Pharmaceuticals now submitted for decision. Thank all of you for your helpful arguments.
judges: W. Fletcher, Watford, Collins